**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert A. Maltsberger, ) | No. CV-10-1923-PHX-GMS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Michael J. Astrue, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

Presently before the Court is a Motion to Remand pursuant to sentence four of 42 U.S.C. § 405(g), filed by Defendant Michael J. Astrue, Commissioner of Social Security. (Doc. 27). For the reasons set forth below, the Court grants Defendant's Motion and remands this matter to the Commissioner for payment of benefits.

**BACKGROUND**

On June 30, 2005, claimant Robert Maltsberger prospectively filed applications for Disability Insurance Benefits and Supplement Security Income, alleging a disability onset date of July 1, 2001. (R. at 18). The claim was denied initially on October 21, 2005 and upon reconsideration on March 29, 2007. Plaintiff filed a timely request for a hearing, and, on December 1, 2008, an Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's claims. The claimant amended his alleged disability onset date to April 21, 2005.

In a decision dated June 25, 2009, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on April 21, 2005, and that

1  he had the following severe impairments: chronic obstructive pulmonary disease, asthma,
2  diabetes, alcohol abuse and tobacco dependence, and osteoporosis resulting from steroid use.
3  (R. at 20). At step three, the ALJ found that Plaintiff "does not have an impairment or
4  combination of impairments that meets or medically equals one of the listed impairments in
5  20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id*.). The ALJ further determined that "the
6  claimant has the residual functional capacity to perform a limited range of sedentary work
7  as defined in 20 C.F.R. 404." (R. at 21). Based on the vocational expert's testimony, the ALJ
8  found that while Plaintiff could not return to his past relevant work, he could perform other
9  work existing in significant numbers in the national economy, including the sedentary jobs
10 of assembly production worker, office helper, and inspector/tester/sorter. (R. at 25–26). Thus,
11 the ALJ concluded he "was not under a disability, as defined in the Social Security Act, at
12 any time from April 21, 2005 through the date of this decision." (R. at 26). The ALJ's
13 decision became the final decision of the Commissioner when the Appeals Council denied
14 Plaintiff's request for review. (R. at 6–9).

15       The Commissioner concedes that the ALJ's step-three analysis of whether Plaintiff
16 has an impairment that meets or medically equals an impairment listed at 20 C.F.R. pt. 404,
17 subpt. P, app. 1 was insufficient. Specifically, the Commissioner "concedes that the record
18 contains evidence which may support a finding that Plaintiff met one or more listings,"
19 including 3.02(C)(2) (chronic pulmonary insufficiency) and 3.03(B) (asthma). (Doc. 28 at
20 5). Nevertheless, neither the examining physician nor the State agency doctor found that
21 either listing had been met. Thus, Commissioner seeks remand for further administrative
22 proceedings to determine whether Plaintiff met the heightened standard for disability at step
23 three by consulting a medical expert, if necessary. (*Id*.).

24       Further, the Commissioner also concedes that the ALJ erred in evaluating Dr. Jean
25 Weaver's opinion that Plaintiff was unable to work full-time. In her report, Dr. Weaver, a
26 treating physician, failed to "reconcile her opinion that Plaintiff could sit, stand, and walk for
27 a full eight-hour day with her opinion that Plaintiff was unable to complete an eight-hour
28 workday or 40-hour workweek." (Doc. 28 at 6) (citing R. at 208–09). Dr. Weaver also failed

- 2 -

to "address information in her own treatment notes indicating that Plaintiff continued to work despite his impairments." (*Id.*). The Commissioner contends that the ALJ erred by adopting Dr. Weaver's opinion regarding Plaintiff's ability to sit, stand/walk, and perform postural activities without discussing Dr. Weaver's opinion that due to shortness of breath at rest, Plaintiff was unable to complete an eight-hour workday or 40-hour workweek. (*Id.*). The Commissioner requests that on remand the ALJ be instructed to reevaluate the medical source opinions on record, including Dr. Weaver's opinion. While both parties agree that the ALJ erred, they disagree over the proper remedy, namely whether Maltsberger's case should be remanded pursuant to sentence four[1] for an award of benefits, which Plaintiff contends would be proper, or for further administrative proceedings.

**DISCUSSION**

In *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), the Ninth Circuit set forth a test to determine when it is appropriate to remand for benefits versus further administrative proceedings. Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See id.* Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988). More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d at 1178; *see also McCartey v.*

---

[1] Sentence four orders are made pursuant to the following statutory language: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1   *Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002); *Smolen*, 80 F.3d at 1292.

2         At step three of theسequential evaluation process, the ALJ was required to determine whether Plaintiff's impairments, or combinations thereof, met or equaled an impairment listed in the regulations. One who claims upon review that the ALJ erred in not determining and finding that a claimant's combined impairments met a listing must offer a theory of how the impairments combined to equal a listed impairment and point to evidence that shows that his combined impairments equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Generally, specific medical findings are needed to support the diagnosis and establish the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). Plaintiff argues that the ALJ erred in step three by failing to address whether his impairments met or equaled Listing 3.02(C)(2), chronic pulmonary insufficiency, and 3.02(B), asthma. The Commissioner concedes that the ALJ failed to provide legally sufficient reasons, at step three, for rejecting evidence related to whether Plaintiff's condition met or medically equaled a listed impairment. Even more, the Commissioner concedes that the "record contains evidence which may support a finding that Plaintiff met one or more listings," including Listings 3.02(C)(2) and 3.03(B).  (Doc. 28 at 5).

Listing 3.02(C)(2) requires:

> C. Chronic impairment of gas exchange due to clinically documented pulmonary disease.  With:
>
> > 2. Arterial blood gas values of $PO_2$ and simultaneously determined $PCO_2$ measured while at rest (breathing room air, awake and sitting or standing) in a clinically stable condition on at least two occasions, three or more weeks apart within a 6-month period, equal to or less than the values specified in the applicable table III-A or III-B or III-C. 20 C.F.R. Subpt. P, App. 1, 3.02(C)(2).

The tables associated with this Listing (Doc. 29, Ex. 1)[2] indicate that an individual, with findings occurring "at least two occasions, three or more weeks apart within a 6-month

---

[2] Because Plaintiff's arterial blood gas studies were performed at testing sites in Lake Havasu City, Arizona and Parker, Arizona, both situated at elevations less than 3,000 feet above sea level, Table III-A is appropriate.

- 4 -

1  period" would meet the requirements of Listing 3.02(C)(2) in at least these two instances:
2  (1) a $PCO_2$ measurement of 30 mm Hg or below with a simultaneous $PO_2$ measurement of
3  65 mm Hg or less; and (2) with a $PCO_2$ measurement of 40 mm Hg or above with a
4  simultaneous $PO_2$ measurement of 55 mm Hg or less. *Id*. Plaintiff meets the listings as to the
5  $PCO_2$ and $PO_2$ measurements. *See* R. at 538 ($PCO_2$ = 29.7 mm Hg; $PO_2$ = 54.2 mm Hg), 399
6  ($PCO_2$ = 41.9 mm Hg; $PO_2$ = 52.2 mm Hg). Plaintiff also satisfies the duration requirement
7  specified in the Listing because his first examination took place on January 15, 2006 and the
8  second on February 14, 2006, nearly a month later. (R. at 538, 399). Thus, the two
9  examinations are at least three weeks apart yet within a six-month period. Further, the
10 evidence reveals that Plaintiff met the requirements of Listing 3.02(C)(2) as of his alleged
11 disability onset date of April 21, 2005. Plaintiff had listing-level blood gas values on January
12 8, 2005, February 17, 2005, February 18, 2005, and April 21, 2005. (R. at 494).

13 Nevertheless, the ALJ's complete explanation at step three states: "The Disability
14 Determination Service (DDS) determined that the claimant's impairments do not meet the
15 criteria of any of the listed impairments. No treating or examining physician has mentioned
16 findings equivalent in severity to the criteria of any listed impairment. The administrative law
17 judge has reviewed the records and finds that the claimant does not have impairments which
18 meet or equal the requirements of any section of Appendix 1." (R. at 20–21). The Court's
19 review of the record indicates that the examining physician, Dr. Ray Hughes, notes in his
20 report that Plaintiff's January 2006 examination "suggest[s] listing level, but only 1 trial."
21 (R. at 138). However, the record indicates that Plaintiff underwent a second examination in
22 February 2006, and that exam also satisfied the listing level. *See* R. at 399. In his written
23 decision, the ALJ fails to consider this evidence or to provide any explanation for why the
24 arterial blood gas studies should be disregarded. Based on the foregoing, the Court finds that
25 the ALJ erred in concluding that Plaintiff did not meet or equal Listing 3.02(C)(2).

26 Additionally, Listing 3.03(B) requires:
27 Asthma.
28

- 5 -

> B. With: Attacks (as defined in 3.00C)[3], in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks. 20 C.F.R. pt. 404, subpt. P, app. 1.

Plaintiff contends that he meets the criteria of Listing 3.03(B) as a result of several inpatient hospitalizations. Indeed, the record establishes that Plaintiff was hospitalized on an inpatient basis for treatment of asthma at least three different times during a 12-month period commencing April 27, 2005. These include: (1) inpatient hospitalization from April 27, 2005 through May 3, 2005 for "asthma exacerbation" and "left lower lobe pneumonia," which was treated, in part, with IV antibiotics, albuterol SVN, and IV Solu-Medrol, which can be used as a bronchodilator. (R. at 757–792); (2) inpatient hospitalization from December 14, 2005 through December 22, 2005 for "exacerbation of asthma chronic obstructive pulmonary disease", which was treated, in part, with IV antibiotics and IV Solu-Medrol (R. at 481–84); and (3) inpatient hospitalization from January 24, 2006 through January 30, 2006 for "exacerbation of underlying asthma/chronic obstructive pulmonary disease" and "anaerobic pneumonia", which was treated, in part, with IV antibiotics and IV Solu-Medrol. (R. at 540–43). Because each inpatient hospitalization lasting for longer than 24 hours counts as two episodes towards the requisite six episodes in a 12-month period, Plaintiff's three hospitalizations satisfy the requirements of Listing 3.03(B).[4] The ALJ's failure to consider this evidence constitutes legal error. When the hospitalization data is credited, it becomes clear that Plaintiff's condition is sufficient to meet or equal Listing 3.03(B).

Because the ALJ failed to provide legally sufficient reasons for rejecting relevant

---

[3] Listing 3.00C defines "attacks" as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."

[4] Beyond these three incidents of hospitalization, Plaintiff was also hospitalized for his asthma from September 18–24, 2005 (R. at 317), January 15, 2006 (R. at 501–03), February 13, 2006 (R. at 414), and February 14–17, 2006 (R. at 362–63).

1 evidence related to Plaintiff's chronic pulmonary insufficiency and asthma, the Court credits
2 the evidence as true. *See Harman*, 211 F.3d at 1179; *Smolen*, 80 F.3d at 1281–83; *Varney*,
3 859 F.2d at 1398. With respect to the other two prongs of the *Harman* inquiry, the Court
4 concludes that there are no outstanding issues that must be resolved before a determination
5 of disability can be made and that it is clear from the record that the ALJ would be required
6 to find the claimant disabled if the evidence is credited.[5] *See Harman*, 211 F.3d at 1178.
7 Because the Court finds Plaintiff disabled at step three of the sequential evaluation process,
8 it is not necessary to discuss the Commissioner's request for remand on grounds that the
9 ALJ erred in his evaluation of Dr. Jean Weaver's opinion regarding Plaintiff's ability to
10 work. (Doc. 28 at 6–7). Consideration of Plaintiff's ability to engage in past relevant work
11 or other work existing in significant numbers in the national economy is only relevant at
12 steps four and five of the five-step sequential evaluation process, as set forth in 20 C.F.R. §
13 404.1520(a)(4). *See Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) ("Conditions
14 contained in the 'Listing of Impairments' are considered so severe that they are irrebuttably
15 presumed disabling, without any specific finding as to the claimant's ability to perform his
16 past relevant work or any other jobs." (citing 20 C.F.R. § 404.1520(d))). Thus, there are no
17 remaining issues that must be resolved by further administrative proceedings. The record is
18 fully developed and additional proceedings would serve no useful purpose. *See Benecke v.*
19 *Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

20 In cases where it is evident from the record that benefits should be awarded,
21 remanding for further proceedings would needlessly delay effectuating the primary purpose
22 of the Social Security Act, "to give financial assistance to disabled persons because they are
23 without the ability to sustain themselves." *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir.
24 1995) (internal quotation marks and citation omitted). As a result, the Court reverses and
25 remands for payment of benefits. *See Lester*, 81 F.3d at 834 (stating that, when evidence that

---

27 [5] If step 3 is answered affirmatively, that the applicant meets or equals the severity
requirements of a listed impairment, then the applicant is conclusively deemed to be disabled
28 and the sequential evaluation process ends. 20 C.F.R. § 404.1520(a) and (d).

was improperly rejected demonstrates that the claimant meets or equals the Listing, then the court should remand for payment of benefits; *Smolen*, 80 F.3d at 1292 (same); *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993) (same).

## CONCLUSION

The ALJ committed legal error by failing to provide legally sufficient reasons for not finding Plaintiff disabled at step three. The record establishes that if evidence of Plaintiff's arterial blood gas studies and his episodes of hospitalization as a result of his pulmonary condition are credited as true, which must be done in the instant case, the Plaintiff's impairment definitively meets or medically equals the criteria for chronic pulmonary insufficiency (3.02(C)(2)) and asthma (3.03(B)). Because the record has been developed fully and further administrative proceedings would serve no useful purpose, remand for an immediate award of benefits is appropriate.

**IT IS HEREBY ORDERED** that:

1. The ALJ's decision is **REVERSED**;

2. Defendant's Motion to Remand to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) is **GRANTED** (Doc. 27); and

3. The Clerk of the Court is directed to **REMAND** back to the Social Security Administration pursuant to 42 U.S.C. § 405(g), sentence four, for payment of benefits.

Dated this 6th day of June, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge